FILED
United States Court of Appeals
Tenth Circuit

July 30, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHARLES A. GREENE,

        Plaintiff - Appellant,

v.

ROBERT IMPSON, Acting Eastern
Regional Director of Oklahoma Bureau of
Indian Affairs- Department of Interior;
RAMONA L. ELLIS, Superintendent of
Bureau of Indian Affairs- Department of
the Interior, Talihina Agency,

        Defendants – Appellees.

No. 12-7068
(D.C. No. 6:12-CV-00259-RAW )
(E. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

The question in this appeal is whether officials from the Bureau of Indian Affairs

(BIA) violated Charles Greene's constitutional rights by failing to provide him an

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

application form to allow descendants of Choctaw Indian Freedman[1] to apply for federal recognition as an Indian.

Greene is the great grandson of Bennie Vinson, a Choctaw Indian Freedman listed on the *Index and Final Rolls of the Citizens and Freedmen of the Choctaw and Chickasaw Tribes* approved June 21, 1906.[2] Sometime prior to April 2009, Greene requested a "Certificate of Degree of Indian Blood" (CDIB) (a prerequisite for him to receive certain government assistance) from the BIA. *See Davis v. United States (Davis I)*, 192 F.3d 951, 956 (10th Cir. 1999); *see also Underwood v. Deputy Assistant Sec'y—*

---

[1] The Choctaws are one of the "Five Civilized Tribes." *See Indian Country, USA, Inc. v. State of Okla. ex rel. Okla. Tax Comm'n*, 829 F.2d 967, 970 n.2 (10th Cir. 1987). In the 1830s, the United Sates seized the Choctaw's ancestral territory and relocated the Tribe to Oklahoma. *See Harjo v. Kleppe*, 420 F. Supp. 1110, 1119 (D.C. D.C. 1976); *see also* http://www.choctawnation.com/history/. Included in the relocation were African slaves owned by many tribe members. *See* http://digital.library.okstate.edu/encyclopedia/entries/f/fr016.html; *see also Choctaw Nation of Indians v. United States*, 318 U.S. 423, 424 (1943). In 1866, a treaty between the United States and the Tribe abolished slavery within the Tribe. *See* Treaty with the Choctaw and Chickasaw, U.S.-Choctaw and Chickasaw Nations of Indians, art. II, Apr. 28, 1866, 14 Stat. 769; *see also Choctaw Nation of Indians*, 318 U.S. at 424. These former slaves became known as Freedmen. *See Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971) (describing Cherokee Freedmen).

[2] The *Index and Final Rolls of the Citizens and Freedmen of the Choctaw and Chickasaw Tribes* approved June 21, 1906, is derived from the rolls created by the Dawes Commission, whose task was to negotiate with the Five Civilized Tribes for relinquishment of their lands to either the United States or to individual members of the Tribe. *See Winton v. Amos*, 255 U.S. 373, 379 (1921); *United States v. Ferguson*, 247 U.S. 175, 177 (1918); *United States v. City of McAlester, Okla*., 604 F.2d 42, 48 (10th Cir. 1979). After negotiations with the Tribes failed, Congress passed the Curtis Act which required allotment of the Tribes' land to their members. To determine who was eligible for such allotment, the Curtis Act tasked the Dawes Commission with creating "rolls" of the Tribes' members. *See Ferguson*, 247 U.S. at 176-77; *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1441 (D.C. Cir. 1988); *Witt v. United States*, 681 F.2d 1144, 1147-48 & n.8 (9th Cir. 1982).

*Indian Affairs (Operations)*, 14 IBIA 3, 14-16 (IBIA 1986). The BIA denied his request because he could not "verify direct lineage to a Choctaw enrollee who is listed with an Indian blood degree on the *Index and Final Rolls of the Citizens and Freedmen of the Choctaw and Chickasaw Tribes* approved June 21, 1906 (34 Stat. 325)." (R. at 135.) In 2010, he asked the Superintendent of the BIA to provide a form with which he could apply for federal recognition as a descendant of a Choctaw Indian Freedman. The Superintendent forwarded the letter to the Regional Director of the Eastern Oklahoma BIA, who denied the request because no such form existed.

Greene filed a pro se complaint against the Regional Director of the Eastern Oklahoma BIA and the Superintendent of the BIA (Officials), alleging constitutional violations based on their refusal to provide him with an application form allowing descendants of Indian Freedman to be federally recognized as an Indian.[3] Officials

---

[3] Greene alleges Officials violated his right to equal protection under the Fourteenth Amendment. But that Amendment applies only to state actors. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). We therefore construe his claims as arising under the Due Process Clause of the Fifth Amendment, which applies to federal officials and which, although not containing an equal protection clause, encompasses equal protection principles. *Johnson v. Califano*, 656 F.2d 569, 573 n.4 (10th Cir. 1981); *see also Washington v. Davis*, 426 U.S. 229, 239 (1976); *Bolling*, 347 U.S. at 499; *Smith v. Kitchen*, 156 F.3d 1025, 1028 (10th Cir. 1997). He also cites 42 U.S.C. § 1983 as the basis for bringing his constitutional claims. However, § 1983 also applies only to state actors. *See* 42 U.S.C. § 1983. Because Officials are federal employees, his complaint sounds in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), where the Supreme Court "recognized for the first time an implied private right of damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). While courts should be reluctant to extend *Bivens* beyond its context and category of defendants (Fourth Amendment claim against federal law enforcement officers), the Supreme Court has allowed a *Bivens* action to

(continued. . .)

moved to dismiss.  The district judge granted the motion.  He determined that to the extent Greene was seeking tribal membership, the court lacked jurisdiction; to the extent Greene alleged constitutional violations based on Officials failing to provide him an application form, the judge concluded the allegations, even if true, did not state a claim— Greene had not established a constitutional violation and, even if he had, it was not clearly established.[4]  Because Greene is not seeking tribal membership, only the latter ruling is before us.[5]

Greene says Officials violated the Due Process Clause of the Fifth Amendment by denying him an application form which would allow descendants of Indian Freedmen to

redress the equal protection component of the Fifth Amendment Due Process Clause.  *See Aschcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Davis v. Passman*, 442 U.S. 228, 229-30, 234-35, 245-48 (1979).  But, as we explain, Greene was not denied equal protection of the laws.

[4] The district judge's analysis regarding whether the constitutional right was clearly established relates to a government officer's qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This defense and its analysis applies to both § 1983 and *Bivens* actions.  *Butz v. Economou*, 438 U.S. 478, 499-500 (1978); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 720 n.6 (10th Cir. 1988).  But Officials did not raise a qualified immunity defense.  *See Harlow*, 457 U.S. at 815 (qualified immunity is an affirmative defense which must be pled by the defendant).  Nevertheless, we agree with the judge that Greene did not establish a constitutional violation and therefore his complaint does not state a claim for relief.

[5] Despite Greene's repeated statements he is not seeking tribal membership, Officials defend the district judge's decision based on a court's lack of jurisdiction over tribal membership issues.  Membership is a tribal function over which we lack jurisdiction.  *Ordinance 59 Ass'n v. U.S. Dep't of the Interior Sec'y*, 163 F.3d 1150, 1155, 1157, 1160 (10th Cir. 1998).  However, eligibility to participate in government assistance programs via a CDIB is a BIA function, which we may review.  *See Harrison v. Dep't of Interior, Bureau of Indian Affairs*, 229 F.3d 1163, No. 99-7108, 2000 WL 1217841, at *2 (10th Cir. Aug. 28, 2000) (unpublished).  Officials also argue Indian Tribes cannot be sued for constitutional violations.  Greene is not suing the Choctaw Nation; he is suing BIA officials.  Officials' brief is not helpful.

be federally recognized as Indians for certain government assistance programs. According to Greene, the BIA's refusal to recognize this class is based on "racial animus."[6] (R. at 11.) We review de novo a dismissal for failure to state a claim.[7] *See Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 806 (10th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To be federally recognized as an Indian for purposes of participating in certain government assistance programs, a CDIB is required. *Davis I*, 192 F.3d at 956. The BIA only issues CDIBs to individuals possessing a specific quantum of Indian blood which is determined by reference to the rolls established by the Dawes Commission. *See Davis ex. rel. Davis v. United States (Davis II)*, 343 F.3d 1282, 1286 (10th Cir. 2003); *Davis I*, 192 F.3d at 956; *Underwood*, 14 IBIA at 14-16. Thus there is no application form which

---

[6] Greene does not specifically identify what he seeks to gain from being federally recognized as an Indian. Indeed, his request is limited to wanting an application form—one that does not exist. Applying a most liberal construction to his complaint, *see Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003), based on his request for a CDIB from the BIA, we assume he is seeking Indian status to participate in certain government assistance programs.

[7] The judge did not clarify whether it was dismissing under 28 U.S.C. § 1915(e)(2)(B)(ii) or Rule 12(b)(6) of the Federal Rules of Civil Procedure. In any event, the standard of review is the same. *See Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 806 (10th Cir. 1999).

allows an individual to seek federal recognition as an Indian without proof of Indian blood.  To the extent Greene argues this distinction is discriminatory because descendants of African Freedman are excluded, descendants of Citizens by Marriage—those individuals who were married to a Choctaw Indian at the time of enrollment but who possess no Indian blood—are also on the rolls but excluded from receiving a CDIB.  *See* http://www.archives.gov/research/arc/native-americans-final-rolls.html.  Therefore, any discrimination is between blood and non-blood Choctaw Indians; the distinction is not based on Greene's race.  And classifications based on Indians and non-Indians do not offend the Due Process Clause because such classifications "[are] not based upon impermissible racial classifications" but instead are "rooted in the unique status of Indians as . . . once-sovereign political communities."  *See United States v. Antelope*, 430 U.S. 641, 645-46 (1977) (holding statutes allowing federal prosecution of Indians did not violate Fifth Amendment Due Process Clause); *see also Morton v. Mancari*, 417 U.S. 535, 552-54 (1974) (upholding limited employment preference for Indians by the BIA because "preference . . . is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities").  Because Greene has neither alleged nor presented evidence of a racially discriminatory purpose by Officials, his Fifth Amendment claim fails.  *See Washington v. Davis*, 426 U.S. 229, 239-40 (1976).

      **AFFIRMED.**

                        **Entered by the Court:**

                        **Terrence L. O'Brien**
                        United States Circuit Judge